# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MICHELLE A. STEVENS,**

     **Plaintiff,**

**v.**                                                    **CASE NO. 8:06-CV-2006-T-30EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security Administration,**

     **Defendant.**

_____ /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g)and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI").

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. <u>See</u> 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the

---

[1] The district court has referred this matter to the undersigned for consideration and a Report and Recommendation. <u>See</u> Local Rules 6.01(b) and 6.01(c), M.D. Fla.

Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).[2]

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

# I.

Plaintiff filed her application for SSI on August 26, 2004, with an alleged onset of disability of January 1, 1987.  (T 67)  At the hearing held on March 21, 2006, Plaintiff amended her onset date to March 31, 2003.  (T 474)  Plaintiff claims disability due to degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), osteopenia, history of right shoulder fracture and right foot fracture, anxiety and mild depression.  (T 57, 64, 86, 105)  Plaintiff was thirty-nine years old at the time of the hearing with a seventh grade education.  (T 63, 456)  Her past work experience was as a sales clerk, landscaper, auto detailer and most recently as a housekeeper.   (T 97)

In a decision dated June 27, 2006, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged amended onset of disability. (T 9E)  The ALJ determined that although Plaintiff suffers from the severe impairments of mild degenerative disc disease of the

---

[2]  Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

lumbar spine, osteopenia, history of remote right shoulder fracture, chronic COPD due to tobacco

abuse, history of drug and alcohol abuse, and a history of right foot fracture, these impairments did

not meet or medically equal one of the impairments in Appendix 1, Subpart P, Regulations No. 4.

(T 9E-9F)  In addition, the ALJ found that, although Plaintiff was diagnosed as having a somatoform

disorder, mild depression and chronic despondency, the alleged symptoms of a severe mental

impairment were not substantiated by the evidence in the record.  As such, the ALJ concluded that

Plaintiff's alleged mental impairments were not severe.  Further, the ALJ found that Plaintiff's

allegations regarding the severity of her impairments were not entirely credible. (T 9F-9J)  The ALJ

concluded that Plaintiff had the following residual functional capacity ("RFC"):

> . . . claimant has the residual functional capacity to lift and carry ten
> pounds occasionally and five pounds frequently.  She can stand and
> walk for two hours in an eight-hour day and sit for six hours in an
> eight-hour day.  The claimant can never climb ropes, ladders,
> scaffolding, but can occasionally climb stairs, balance and stoop,
> kneel, crouch, and crawl.  She should not be around dangerous
> machinery or unprotected heights due to side effects of her
> medication.  She should have no concentrated exposure to heat, cold,
> humidity, dust, fumes or gases.

(T 9E)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff's

severe impairments prevented her from performing her past relevant work. (T 9J)  However, based

upon the testimony of the VE, the ALJ determined that Plaintiff could perform a restricted range of

unskilled sedentary work.[3]  (T 9K)  Therefore, the ALJ found that Plaintiff was not disabled under

---

[3]  The regulations define sedentary work as follows:

> Sedentary work involves lifting no more than ten (10) pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain amount

the Act.  (T 9L)

On September 22, 2006, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 5-7)  Plaintiff filed a timely petition for judicial review.  Plaintiff has exhausted all administrative remedies, and the Commissioner's decision is ripe for review under the Act.

Most of the medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff alleges the Commissioner erred in (1) failing to consider the combined effect of all Plaintiff's impairments; (2) determining Plaintiff's RFC; and, (3) evaluating Plaintiff's subjective complaints of pain. (Dkt. 16)

**A.**  Plaintiff argues that the ALJ erred in failing to consider the combined effect of all Plaintiff's impairments.

The ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence."  Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  In addition, the ALJ must explain whether the impairments are severe singularly and in combination.  Id.  The combined effect of impairments must be considered even if any of the impairments considered separately are not "severe." Jones v. HHS, 941 F.2d 1529, 1533 (11th Cir. 1991).  The failure to comply with these requirements results

---

of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

4

in a remand.  Gibson, 779 F.2d at 623.

The ALJ's exhaustive discussion and her specific reference to the combined effect of Plaintiff's impairments, demonstrates that the ALJ considered all of Plaintiff's impairments both in isolation and in combination.  (T 9E-9J)  The ALJ determined that despite Plaintiff's degenerative disc disease and allegations of totally disabling symptoms, Plaintiff was able to ambulate effectively and had no problem with fine or gross manipulation.  In addition, the ALJ noted that Plaintiff did not have a FEV1 low enough to meet the Listing requirements under the pulmonary section of the Listing of Impairments.  (T 9I)  In reference to her right shoulder pain, the ALJ found after Plaintiff received treatment for her injury, her shoulder healed and she returned to work.  (T 9H)  Based upon a review of the medical records, the ALJ concluded that Plaintiff's alleged mental impairments were not severe.  (T 9E)  In sum, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or  medically equals one of the listed impairments" in Appendix 1, Subpart P, Regulations No. 4. (T 9F)  This language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination.  Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).  Accordingly, Plaintiff's argument that the ALJ failed to consider her impairments in combination is without merit.

**B.**  Plaintiff contends that the ALJ erred in determining Plaintiff's RFC.  Specifically, Plaintiff argues that the ALJ did not consider Plaintiff's shortness of breath, fatigue and complaints of back pain in assessing Plaintiff's RFC and ability to perform sustained work activites.  Further, Plaintiff argues that the ALJ failed to properly consider the opinion of Plaintiff's treating physician in determining Plaintiff's RFC.

The ALJ has the final responsibility in assessing a claimant's RFC.  See 20 C.F.R. § 416.927

(e)(2).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push and pull.  See 20 C.F.R. § 404.1545(b).  In addition, the ALJ's review of the evidence must be based on the record as a whole.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

      1.      Plaintiff's Complaints of Shortness of Breath

In reference to Plaintiff's complaints of shortness of breath, the ALJ reviewed the findings of Plaintiff's treating physician, Leonard Y. Cosmo, M.D. ("Dr. Cosmo").  (T 9I)  In June 2005, Plaintiff was evaluated by Dr. Cosmo.  Plaintiff's chest x-ray showed some course lung markings, but no acute infiltrate or consolidation.  (T 381)  Her EKG showed normal sinus rhythm and Plaintiff's pulmonary function test revealed an FEV1 of 73 percent.  (T 381) According to Dr. Cosmo, Plaintiff had COPD and obstructive airflow limitation of a mild degree.  (Id.)  Dr. Cosmo changed Plaintiff's medications to optimize the nebulizer therapy and inhaled steroid dosage.  (T 382)  In July 2005, Dr. Cosmo noted that Plaintiff had "some shortness of breath, some coughing, wheezing, less exacerbations" and her condition was "consistent with obstructive and/or restrictive airflow limitation of a moderate degree."  (T 379)  In October 2005, Dr. Cosmo reported that Plaintiff had some shortness of breath but that Plaintiff's pulmonary function test showed a FEV1 of 71 percent, which was "consistent with obstructive and/or restrictive airflow limitation of a mild to moderate degree."  (T 378)

The ALJ also considered the pulmonary RFC questionnaire completed by Dr. Cosmo on December 9, 2005. (T 329) Dr. Cosmo diagnosed Plaintiff with COPD, with symptoms of shortness of breath, chest tightness, rhonchi, fatigue, wheezing and coughing.  (Id.)  Dr. Cosmo stated that Plaintiff's prognosis was poor and she could sit, stand and walk less than two hours a day.  (T 331) In Dr. Cosmo's opinion, Plaintiff would not be able to lift or carry ten pounds or twist, stoop,

6

crouch, climb ladders or stairs.  (T 332)  Dr. Cosmo estimated that Plaintiff would miss more than four days a month as a result of her impairments or treatment.  (T 333)  Additionally, Dr. Cosmo recommended that Plaintiff avoid all exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, smoldering fluxes, solvents and chemicals.  (Id.)

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the opinion of a treating physician regarding a disability or inability to work may be discounted if it is unsupported by objective medical evidence, conclusory, or contrary to the evidence.  Bloodsworth, 703 F.2d at 1240; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).  If the ALJ gives less than controlling weight to the opinion of a treating physician, he must give specific reasons, and failure to state those reasons is reversible error.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining Plaintiff's RFC, the ALJ gave "great weight" and "significant weight" to Dr. Cosmo's opinion and considered the work limitations Dr. Cosmo recommended for Plaintiff.  (T 9I-9J)  The ALJ specifically considered Dr. Cosmo's statements regarding the limitations caused by Plaintiff's pulmonary restrictions.  Although various state agency consultants determined that Plaintiff could perform a full range of light work, the ALJ gave little weight to these non-treating and non-examining physicians and the ALJ further reduced the Plaintiff's RFC based on Dr. Cosmo's opinion.  (T 9J)  In light of Dr. Cosmo's opinion, the ALJ concluded that Plaintiff was capable of performing a restricted range of sedentary work with no climbing of ropes, ladders, or scaffolding, occasional climbing of stairs, occasional stooping, kneeling, crouching, or crawling, no work around dangerous machinery or unprotected heights, and no exposure to concentrated heat,

cold, humidity, dust, fumes or gases.  (T 9F)   Thus, the ALJ did consider Plaintiff's shortness of breath and Dr. Cosmo's opinion in formulating Plaintiff's RFC.

The ALJ, however, rejected Dr. Cosmo's opinion that Plaintiff could sit, stand and walk less than two hours a day and would miss more than four days a month from work.  (T 9I)  Specifically, Dr. Cosmos concluded that Plaintiff could sit and stand for only five minutes at one time.  (T 331) Plaintiff fails to cite to any medical records which support Dr. Cosmo's opinion.   (Dkt. 16) Moreover, Dr. Cosmo's 2005 examination notes contradict his subsequent RFC assessment completed in December 2005.  During the examinations of Plaintiff in 2005, Dr. Cosmo concluded that Plaintiff's COPD resulted in a restrictive airflow limitation of only a mild to moderate degree. (T 378-382)  Similarly, when Plaintiff visited the Wimauma Family Health Center in 2003 and 2004 for complaints of sinus pain, coughing, sore throat, wheezing and was treated for bronchitis and COPD (T 212, 217, 219, 230), there was no indication that Plaintiff's shortness of breath prevented her from performing a restricted range of sedentary work.  In addition, Plaintiff's description of her daily activities to Gerald Mussenden, Ph.D. ("Dr. Mussenden"), a psychologist, contrasts with Dr. Cosmo's RFC assessment.   During Plaintiff's interview with Dr. Mussenden, Plaintiff stated she was able to wash clothes, shower, bathe, dress, shop, use the telephone, watch television, go to restaurants and drive.  (T 283)  Hence, the ALJ had good cause to discount Dr. Cosmo's opinion regarding Plaintiff's ability to sit, stand, and walk during a work day.

      2.    <u>Plaintiff's Complaints of Fatigue</u>

Plaintiff contends that ALJ failed to consider her complaints of fatigue in determining her RFC.  In particular, Plaintiff alleges that the side effects of her medications cause fatigue.  (T 462) Defendant argues that Plaintiff's subjective complaints of fatigue do not demonstrate her inability

to sustain a forty hour a week work schedule.

An ALJ has a duty to investigate the possible side effects of medication taken by a claimant. See Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981).  Here, the record reveals that the ALJ complied with this duty to investigate the side effects of Plaintiff's medication.  The ALJ expressly questioned Plaintiff about the side effects of her medications.  (T 462)  Plaintiff testified that her medications cause "tiredness," which limited her ability to stand and sit for more than 15 minutes or lift and carry over five pounds.  (T 462-464)  In her decision, the ALJ found that due to the effects of her medication, Plaintiff should not be around dangerous machinery or unprotected heights.  (T 9E)  Thus, it is evident that the ALJ considered the side effects of Plaintiff's medication in ascertaining her RFC.  However, because Plaintiff fails to cite to any medical opinions which support her allegations that the side effects of the medications inhibit her ability to stand, sit or walk for more than 15 minutes,  the ALJ properly discounted Plaintiff's testimony.  (T 9G-9J)

To the extent that Plaintiff relies upon Dr. Cosmo's opinion in arguing that fatigue inhibits her ability to sustain work activities on a regular and continuing basis, as previously discussed, the ALJ properly discounted  Dr. Cosmo's RFC assessment.  In June 2005, Dr. Cosmo prescribed an increase of Plaintiff's inhaled steriod dosage and Advair and he added "two additional medications so she will be on triple medicines in the respiratory therapy."  (T 382)   In June and July 2005, Dr. Cosmo conducted a complete review of Plaintiff's medications "with attention to dosage and frequency."  (T 379)  In October 2005, Dr. Cosmo recommended that Plaintiff continue on her current regimen of medications.  (T 378)   There is no evidence that Dr. Cosmo concluded that the side effects of Plaintiff's medications prevented her from performing a restricted range of sedentary work.  In sum, the court finds that the ALJ properly considered Plaintiff's allegations of fatigue in

9

ascertaining Plaintiff's RFC.

      3.    <u>Plaintiff's Complaints of Back Pain</u>

Plaintiff contends that the ALJ erred in not considering Plaintiff's complaints of back pain in determining her RFC.  Plaintiff argues that the ALJ failed to negate Plaintiff's uncontroverted testimony regarding her limitations caused by her back pain.  (Dkt. 16 at 8)  According to Plaintiff's testimony, her back pain is constant and keeps her from standing or sitting for even a minimal amount of time.  (Dkt. 16 at 4, T 459, 462-465)  Moreover, Plaintiff argues that when she did the minimum necessary for household chores, each chore was a painful endeavor.  (Dkt. 16 at 4)  Plaintiff further asserts that the ALJ ignored the medical evidence regarding her back pain.  In particular, Plaintiff contends that medical tests, including magnetic resonant imaging ("MRI") tests and a bone density scan, as well as the medical records of her treating physicians support her complaints of constant debilitating back pain.  (<u>Id.</u>)

Here, however, the ALJ's finding and discussion reflect a thorough consideration of Plaintiff's testimony and the medical evidence regarding her complaints of back pain.   In her decision, the ALJ noted that Plaintiff testified that she was unable to work due to back and leg pain with throbbing, pinching and numbness.  (T 9F, T 459)  The ALJ further mentioned that Plaintiff complained of pain all day, that her medication temporarily relieved the pain and that for the past three years Plaintiff spent most of her day in bed.  (T 9G, T 463-465)  However, the ALJ discounted Plaintiff's testimony regarding her back pain because it conflicted with Plaintiff's description of her daily activities provided to Dr. Mussenden in November of 2004.  According to Dr. Mussenden's notes, Plaintiff stated she was able to wash clothes, shower, bathe, dress herself, shop,  drive, go to restaurants and visit others on occasion.  (T 283)

In addition, the ALJ stated that Plaintiff failed to cite to any medical records which supported her testimony regarding her debilitating back pain. (T 9J)  In March 2003, Plaintiff's treating physician, Thomas DiGeronimo, M.D. ("Dr. DiGeronimo") wrote that the results of Plaintiff's MRI revealed no significant pathology.  (T 174)  In September 2003, Dr. DiGeronimo performed an electrodiagnostic study which showed no evidence of lumbar radiculopathy and Plaintiff's motor nerve conduction, sensory nerve conduction and H-reflect studies were within the normal range. (T 169) Dr. DiGeronimo's treatment plan was limited to pain medications and an exercise program. (T 166, 167)

During 2003, Plaintiff underwent physical therapy for her back pain at the CORA Rehabilitation Clinic.  (T 176-183)   In November and December 2003, the  records from the rehabilitation clinic indicate that Plaintiff reported "her back felt better" and that she was "progressing" and making slow but steady progress.  (T 176, T 179)

In 2004, Plaintiff visited George Sidhom, M.D. ("Dr. Sidhom") for complaints of back pain and spasms. (T 184-190, T 414-419)  Dr. Sidham diagnosed Plaintiff with chronic lower back pain, lumbar disk bulge, lumbar spondylosis and multilevel lumbar radiculopathy.  (T 414)   Plaintiff received two lumbar  epidural blocks; she was alert, well oriented and in no apparent distress.  (T 185, 414)  In July 2004, Plaintiff had another MRI, which showed mild degenerative disc disease and mild osteopenic.  (T 203)  A bone density scan in August of 2004 indicated lumbar spine osteopenia and left femoral osteopenia.  (T 197)

In September 2004, Plaintiff was evaluated by Edwin Colon, M.D. ("Dr. Colon") for back pain.  Dr. Colon indicated that Plaintiff was able to get on the examination table and did not use an assistive device to walk.  (T 271)  Based on his examination, Dr. Colon concluded that Plaintiff had

muscle spasms in the lumbosacral area, possible lumbar degenerative disk disease and possible lumbar radiculopathy due to bulging disks.  (Id.)  Dr. Colon prescribed an analgesic, a muscle relaxant, a nonsteriodal anti-inflammatory and a topical patch for pain.  (Id.)  After reviewing Plaintiff's radiological studies, Dr. Colon determined that Plaintiff's condition did not warrant higher dosages of pain medications.  (T 268)  Instead, Dr. Colon recommended continuing with her current regimen of medications.  (Id.)

In March 2005, Plaintiff was evaluated by Eaton Yen, D.O. ("Dr. Yen") for lower back pain, arthritis and depression.  (T 375) Based on Dr. Yen's examination, Plaintiff's range of motion was adequate, she was able to walk without assistance, her gait was normal and her straight leg raise was negative. (T 376-377) Dr. Yen diagnosed her with chronic lower back pain, depression, history of drug and alcohol abuse.  Dr. Yen performed a series of lumbar epidural steriod injections in 2005 and 2006.  (T 335-377) In September and November 2005, Plaintiff reported that these injections had resulted in an improvement in her condition.  (T 340, 348)

Plaintiff's MRIs in 2003 revealed her alignment was normal, minimal degenerative disc disease, no spondylolysis and no acute bony abnormalities.  (T 236, 248)  In July 2004, Plaintiff's MRI showed only mild osteopenic with no acute bony abnormalities,  mild degenerative changes and soft tissues were unremarkable.  (T 203)   In 2005, Plaintiff had four MRIs of the lumbar spine. (T 395-399)  In March, 2005, the result of the test showed no focal invertebral disc herniation and no spinal stenosis.  (T 397-399)  In July, 2005, Plaintiff's MRI showed mild spondylosis with small osteophte formation; there was no evidence of lumbar disc herniation or significant spinal stenosis. (T 395-396)   In July 2005, there was no significant change from the March 2005 examination.  (T 395)  In October 2005, the MRI revealed a mild change of spondylosis with mild degenerative disc

desiccation.  (T 392)  In addition, the October 2005 MRI showed a very minimal disc bulging which did not result in any significant stenosis.  (Id.)  Thus, the findings of these MRIs do not support Plaintiff's allegations of debilitating back pain.

In sum, other than Dr. Cosmo's RFC assessment, Plaintiff fails to cite to any medical tests or opinions by Plaintiff's treating physicians which collaborates Plaintiff's testimony regarding her back pain.  Thus, the ALJ's determination that Plaintiff's back pain did not prevent her from performing a restricted range of sedentary work is supported by substantial evidence.

**C.**     Plaintiff asserts that, in discrediting Plaintiff's testimony, the ALJ erred in evaluating Plaintiff's subjective complaints of pain by improperly considering Plaintiff's appearance at the hearing.

The Eleventh Circuit applies a three part "pain standard" when evaluating subjective complaints of pain.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  This standard requires the Secretary to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying medical condition and (b) either (1) objective medical evidence confirming the severity of the pain resulting from the medical condition or (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to cause the alleged pain.  Id.  Under the alternate prong of the pain standard, subjective pain testimony which is supported by clinical evidence of a condition which can reasonably be expected to produce the symptoms of which a plaintiff complains is itself sufficient to sustain a finding of disability.  This prong requires the Commissioner to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected.  Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986).  The reasons must be based on substantial evidence.  See Hale v. Bowen, 831 F.2d 1007, 1012 (11th

Cir. 1987).  An ALJ's credibility determination "does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citations omitted).

In the instant case, the ALJ's findings and discussion indicate that she was aware of and applied the Eleventh Circuit pain standard.  See Wilson, 284 F.3d at 1226.  The ALJ noted that Plaintiff testified: (1) she stopped working due to back and leg pain, (2) she suffers from chronic COPD, (3) she is unable to walk to the mailbox without using an inhaler, (4) she takes six breathing treatments a day, (5) she continues to smoke cigarettes, (6) she drives and goes shopping, (7) she gets fatigued from her medications, which limits her ability to stand and sit for more than 15 minutes or lift and carry over five pounds, (8) her breathing is hindered by heat, allergies and walking, (9) she is in pain all day and medications do not relieve pain, and (10) she has spent most of the day in bed for the past three years.  (T 9F-9G)

The ALJ opined that, after considering the record evidence, "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (T 9J)  Except for Dr. Cosmo's RFC assessment, which the ALJ properly discounted, the ALJ determined that the medical records did not support Plaintiff's subjective complaints of pain.  The ALJ also compared Plaintiff's medical records and Plaintiff's testimony found conflicting conclusions. (T 9J)  For instance, Plaintiff denied alcohol usage to Dr. Colon and was diagnosed with a history of alcohol abuse by Dr. Yen.  (T 271, 337, 341, 343, 346)  Further bolstering the ALJ's credibility determination is the opinion of Dr. Mussenden, who performed a

14

psychological evaluation on Plaintiff on November 2, 2004.  (T 281)  In contrast to Plaintiff's hearing testimony that she spent the last three years in bed, Plaintiff advised  Dr. Mussenden that she was able to wash clothes, shower, bathe, dress, shop, use the telephone, go to restaurants, drive and visit others.[4]   (T 283)

The ALJ also based her credibility determination on her observations of Plaintiff at the hearing.  The ALJ observed that "Plaintiff was well-muscled and well-tanned at the hearing.  She was wearing clothing which revealed multiple tattoos as well as three necklaces, large earrings, four bracelets, and rings on each finger and thumbs.  The claimant's appearance at the hearing was not compatible with an individual who testified that she was in bed all day every day and had been for three years."  (T 9J)  Plaintiff implies that the ALJ improperly applied the "sit and squirm" test and based her decision on her personal observation of Plaintiff at the hearing.   The undersigned disagrees.

An ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing; however, an ALJ must not reject the objective medical evidence and claimant's testimony solely upon his observation during the hearing.  Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985).  Here, the ALJ properly considered all the evidence presented.  In her order, the

---

[4]   The ALJ also cited conflicting statements made by Plaintiff regarding her sleeping difficulties.  (T 9J)  Plaintiff told Dr. Mussenden that she was unable to sleep.  (T 282)  The ALJ found that Plaintiff did not report sleeping problems to other physicians.  (T 9J)  Nevertheless, a review of the record reveals that Plaintiff did report sleeping problems to at least two of her physicians.  (T 267-271, 282, 335-377, 378-387 414-419)  Plaintiff initially reported sleeping difficulties to Dr. Yen in March 2005; however, from April 2005 through January 2006, Plaintiff denied any sleep disturbance.  (T 335-371, 375)  Plaintiff also complained to Dr. Geronimo about difficulty sleeping in July 2003.  (T 174)  In light of the other conflicts between Plaintiff's medical records and Plaintiff's testimony, the undersigned concludes the ALJ's finding is harmless error and does not warrant a remand.

15

ALJ discussed, at length, Plaintiff's medical evidence and concluded that Plaintiff's medical records did not support Plaintiff's complaints of debilitating pain and allegations of totally disabling symptoms.  (T 9E-9J)  Similarly, the ALJ considered  Plaintiff's testimony and did not discredit Plaintiff's testimony solely because of her observation of Plaintiff during the hearing.  (T 9G, 9J)  Thus, in this case, the ALJ properly considered Plaintiff's "tanned" and "well muscled" appearance among other criteria in making credibility determinations.   While acknowledging Plaintiff's limitations relating to her severe impairments, the ALJ ultimately concluded that Plaintiff's testimony as to the limitations posed by her conditions was not fully credible.  The ALJ did not rely solely on Plaintiff's appearance and demeanor at the hearing.  Accordingly, Plaintiff's argument is without merit; the ALJ's decision to reject Plaintiff's subjective complaints of pain is supported by substantial evidence.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)      the decision of the Commissioner be **AFFIRMED** and this case  dismissed, with each party to bear its own costs and expenses;

(2)      the Clerk of the Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Dated:** January 29, 2008

ELIZABETH A JENKINS
United States Magistrate Judge


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  <u>See</u> 28 U.S.C.  636(b)(1).